STATE OF MISSOURI, Respondent, v. ROY SWISHER, alias RALPH CUN-
NINGHAM, Appellant, No. 43257—260 S. W. (2d) 6.

Court en Banc, July 13, 1953.

*Hobson Hoar, Melvin J. Duvall* and *Henry R. Gannan* for appellant.

158

*J. E. Taylor* and *John M. Dalton,* Attorneys General, *James W. Faris, W. Brady Duncan* and *W. Don Kennedy,* Assistant Attorneys General, for respondent.

DALTON, J.—Defendant was tried and convicted of perjury and sentenced to two years imprisonment in the state penitentiary. Sections 557.010 and 557.020 (all section references herein are to RSMo 1949 and V.A.M.S.). He has appealed. The principal issue on appeal is the materiality of the matter as to which he swore falsely. Portions of a prior divisional opinion will be used without quotation marks.

The information charged that on or about March 24, 1951, there was pending before a certain magistrate, in Buchanan County, Missouri, "a certain issue between the State of Missouri and Roy Swisher in a certain criminal action for petit larceny, wherein the said State of Missouri was plaintiff and the said Roy Swisher was defendant"; that defendant "then and there appeared as a witness for, and on behalf of himself"; that defendant was duly sworn "that the evidence which he, the said Roy Swisher, should give to the court there touching the matter then in question between the said parties, should be the truth, the whole truth and nothing but the truth; and that, at and upon the trial of the said issue so joined between the parties aforesaid, it then and there became and was a material question whether the said Roy Swisher had ever been convicted of a felony"; and that defendant had feloniously, wilfully, corruptly and falsely sworn: That he had not previously been convicted and sentenced for the following felonies (each of which was described) : Once for possession of narcotics and once for grand larceny in Oklahoma state courts; once for sale of narcotics in a United States district court; and once for Cutting with Intent to Wound in a Nebraska state court; and, further, that he had never been "sent down" for possession of narcotics, had never been convicted of carrying narcotics or having anything to do with narcotics and had been in jail in Oklahoma only once, for petit larceny for a term of 30 days.

The state's evidence showed that on March 24, 1951, defendant was being tried in the said magistrate court for petit larceny, to wit, the theft of oats from the C.B.&Q. Railroad; that defendant offered himself as a witness; and that he was duly sworn, took the stand and testified in his own behalf. A transcript of defendant's testimony on

cross-examination and redirect examination in the petit larceny case was identified, offered and received in evidence. Thereafter, by cross-examination of the state's witness, the defendant showed what his testimony had been on direct examination in that case. We shall review his testimony in the order in which it was given.

On direct examination defendant testified only that his name was Roy Swisher; that he lived at a certain street address and had lived there six years; that he had worked steady for the Union Pacific Railroad for the last seven years; and that he was "a man of family." He was not asked whether he stole the oats.

Upon cross-examination, the assistant prosecuting attorney asked: "Q. Mr. Swisher, did you take this grain?" Defendant's attorney made this objection: "Your Honor, I object to that. His cross-examination must be confined to the questions I have put to him." The objection was sustained. The assistant prosecuting attorney then said: "Q. All right then. You say you have a family? A. That's right. Q. How many times have you been convicted of a crime, Mr. Swisher?" Defendant's attorney's objection ("cross-examination must be limited to the questions I put to him,") was overruled. The assistant prosecuting ▉ attorney stated: I can impeach his testimony if I want to by showing he has previous convictions." Defendant then answered the question (as to how many times he had been convicted of a crime), "About twice." Then followed this cross-examination: "Q. Were you convicted and served time in Enid, Oklahoma, in 1924 for petit larceny and given 30 days in jail and fined $25.00? Do you remember that? A. Oh, yes. Q. Weren't you given a year in jail in 1927 in McAlester, Oklahoma, for possession of narcotics? A. No. Q. You were not? A. No, sir. Q. Were you ever given a year in jail for possession of narcotics? A. No, sir. Q. Never have. Were you given two years in the penitentiary at Jefferson City for grand larceny in 1929? A. I got that up here. Q. In Jefferson City you did that? A. Yes. Q. Did you do a year in jail in McAlester, Oklahoma, for grand larceny in 1935? A. No, sir. Q. Have you ever been in jail in Oklahoma? A. One time. Q. What for? A. Petit larceny. 30 days. Q. That's the only time you have been in jail in Oklahoma? A. That's all. Q. You have never been arrested and convicted of carrying narcotics or having anything to do with narcotics? A. No, sir. Q. Nowhere in the United States? A. No. Q. Were you given a year in the 'pen' in 1941 at Omaha, Nebraska, for assault to do great bodily harm? A. No. Q. You have never been arrested in Nebraska? A. No. Q. Never been convicted of any crime in Nebraska? A. No. Q. But you have been arrested and convicted in the State of Missouri? A. Oh, yes. Q. That's the only state you have been arrested or convicted of any crime? A. No, in Oklahoma. Q. Thirty days for petit larceny, and that's all? A. Yes, sir. Q. That is all."

On redirect examination defendant testified: "Q. You answered the questions about numerous crimes committed. You paid the penalty for those two crimes, did you? A. That's right. They tried them once. We're not trying them now. Q. Since that time have you been going straight? A. Absolutely. Q. Are you working for what company? A. Union Pacific Railroad. Q. Union Pacific Railroad. Did they ever find any complaint about your work? A. Never had a word with them until this came up here. * * * Q. You are the support of your wife and family? A. Nothing else; I have to be. Q. And you take care of them and have for the last seven years? A. That's right. Q. That's all. Witness excused."

In the instant perjury trial, the state put in evidence properly certified copies of the alleged convictions and sentences of defendant, as follows: On January 22, 1927, and October 25, 1927, possession of narcotics, one year each, confinement in Oklahoma State Penitentiary at McAlester; on November 11, 1930, grand larceny, one year, confinement in Oklahoma State Penitentiary at McAlester; on December 10, 1935, possession and sale of narcotics, eighteen months, confinement in Federal prison at Leavenworth, Kansas; on November 10, 1941, Cutting with Intent to ▇▇▇ Wound, one year, confinement in the Nebraska State Penitentiary at Lincoln.

Defendant did not testify in the instant trial and offered no evidence whatsoever. His motion for a directed verdict of acquittal was overruled. He offered no instructions and objected to each of the seven given, all of which were given by the trial court of its own motion.

▇▇ On this appeal defendant-appellant contends that the court erred in refusing to direct a verdict for him at the close of all the evidence, because his testimony denying the prior convictions did not concern a material matter in the trial of the petit larceny case and, therefore, that no case of perjury was made for the jury. Appellant's theory is that on direct examination in the petit larceny case he did not testify "to any fact concerning his guilt or innocence of stealing the oats"; that his testimony concerned wholly immaterial matters not in issue in the case; that, by his testimony on direct examination, he did not put his credibility as a witness in issue, nor testify to any facts for which his testimony could be impeached or contradicted; that cross-examination as to prior convictions is proper only to affect the credibility of a witness or for impeachment purposes and can not affect the issue of guilt or innocence; that in this case his testimony on cross-examination denying the prior convictions was wholly incompetent, immaterial and improper; that it was wholly immaterial whether he was a credible witness or not or whether his direct testimony was true or false; that, since his credibility as a witness was not in issue and since his direct testimony on immaterial matters was not subject to impeachment, his testimony on cross-examination denying prior convictions was as to immaterial matters; and that the evidence

in this case was wholly insufficient to sustain a conviction under the statute which penalizes false swearing as "to any material matter." Section 557.010.

We shall first review certain applicable constitutional and statutory provisions. Article 1, Section 19 of the Constitution of Missouri 1945, provides that no person shall be compelled to testify against himself in a criminal cause. Section 546.260 RSMo 1949, V.A.M.S., provides that "No person shall be incompetent to testify as a witness in any criminal cause or prosecution by reason of being the person on trial or examination * * * but * * * shall be liable to cross-examination, as to any matter referred to in his examination in chief, and may be contradicted and impeached as any other witness in the case * * *." Section 491.050 provides that "Any person who has been convicted of a criminal offense is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be precluded by his answer."

Appellant's position is that under these statutes neither a witness, nor a defendant in the capacity of a witness, may be cross-examined as to prior convictions for the purpose of impeachment, unless he has first testified to facts material to the issues, to wit, concerning the guilt or innocence of the accused. Appellant insists that "the fact defendant took the stand did not make the testimony of prior convictions material." The rule is that "a witness cannot be impeached by contradicting him as to matters which are not relevant to the issue on trial." State v. Taylor, 134 Mo. 109, 154, 35 S.W. 92. "Testimony to affect the credibility of a witness is admissible only as to matters material and relevant to the issue." State v. Dinkelkamp (Mo. Sup.), 207 S.W. 770, 771; State v. Thompson, 338 Mo. 897, 92 S.W. (2d) 892, 894(9). And as to impeachment by cross-examination see State v. McGee, 336 Mo. 1082, 83 S.W. (2d) 98, 109(39). But a defendant, by voluntarily making himself a witness under the privileges of Section 491.050 abolishing his common law incompetency, waives the protection given him under Art. I, Section 19 of the Missouri Constitution and Amendment 14 of the Constitution of the United States and subjects himself to the perils of being cross-examined to the extent authorized by law. State v. Graves, 352 Mo. 1102, 182 S.W. (2d) 46, 53(10). Sections 546.260 and 491.050 apply to a defendant in his capacity as a witness. State v. Ransom, 340 Mo. 165, 100 S.W. (2d) 294, 297; State v. Gentry (Mo. Sup.), 212 S.W. (2d) 63, 64; State v. Parrish (Mo. Sup.), 214 S.W. (2d) 558, 560; State v. Hacker (Mo. Sup.), 214 S.W. (2d) 413, 416(7). And see Annotations, 6 A.L.R. 1608; 103 A.L.R. 350, 357; 161 A.L.R. 233, 253.

It was of course necessary for the state to allege and prove that appellant had sworn falsely to a "material matter," since "false testi-

mony as to immaterial matter is not perjury.'' State v. Hardiman, 277 Mo. 229, 209 S.W. 879, 880; State v. Dineen, 203 Mo. 628, 634, 102 S.W. 480. ''The very essence of the crime of perjury is wilful false swearing to a substantially definite material fact.'' State v. Brinkley, 354 Mo. 337, 189 S.W. (2d) 314, 328 (27, 28). And the mere fact that the testimony was admitted in evidence was insufficient to show its materiality to the issues on trial. State v. Dineen, supra (203 Mo. 628, 638).

In the case of State v. Moran, 216 Mo. 550, 561, 115 S.W. 1126, this court pointed out that, ''All facts are material in the trial of a criminal cause that have a tendency to enable the jury to intelligently reach a correct conclusion concerning the guilt or innocence of the defendant. It does not follow, because the matter testified to is not specially concerning the acts of the defendant in the commission of the offense, that such matter might not be made a subject upon which a charge of perjury might be predicated, if such matter is material. It is but common knowledge that it frequently occurs in the trial of causes that inquiries are made of witnesses touching matters which do not directly concern the commission of the acts which constitute the offense, yet such inquiries and answers may be material and highly important to the end that the triers of the fact may properly and intelligently weigh the testimony in the cause, thereby reaching a correct conclusion as to the guilt or innocence of the party accused.''

In the case of State v. Brinkley, supra, 189 S.W. (2d) 314, 321, this court said: ''The general rule in this state and elsewhere is that perjured testimony need not bear directly upon the main issue, or cover the whole subject of inquiry. It is sufficient if the testimony be collaterally, corroboratively or circumstantially material, and have a legitimate tendency to prove or disprove any material fact pertinent to the inquiry.'' And see State v. Stegall, 318 Mo. 643, 646, 300 S.W. 714, 715(1); State v. Hardiman, supra. It is not necessary ''that the false statement tends directly to prove the issue in order to sustain an indictment for perjury. If it be circumstantially material or tend to support and give credit to the witness in respect to the main fact, it is perjury.'' State v. Day, 100 Mo. 242, 249, 12 S. W. 365. And see 70 C.J.S. 466, Perjury, Sec. 11; 41 Am. Jur. 9, Perjury, Sec. 13.

In the Moran case, supra, defendant was charged with having falsely testified (in a prior criminal case in which he was a defendant) that he had never been convicted of any crime, and the question on appeal was concerning the materiality of his testimony. This court said (216 Mo. 550, 557): ''* * * the facts about which the defendant testified in the robbery case, were material, that is to say, it was material as well as important as affecting the credibility of the defendant as a witness in that cause, to ascertain as to whether or not he had previously been convicted of any crime. The jury had the right to know all the facts concerning this witness which would enable them

to intelligently weigh his testimony. In our opinion as to whether he had been arrested and convicted of any crime previous to the date of his testifying, was material, and the duty rested upon the defendant testifying as a witness, to speak truthfully of this particular fact the same as concerning any other fact that was within his knowledge in the cause.''

Appellant relies particularly upon the case of Rich v. United States, 1 Okla. 354, 33 P. 804, 806, rehearing 37 P. 1083. In that case the Oklahoma court said that the record on appeal contained no proof tending to show (1) that the false testimony which the appellant had given in a land contest case was applicable to any material inquiry in the case or (2) that it was ''in any manner, directly or indirectly, approximately or remotely, material to the issues tried and determined.'' The court held that the mere proof that the testimony was admitted on the trial of the cause, and that it was false, was not sufficient to warrant a court or jury in inferring that such testimony was material to the issues.

Appellant further relies upon the case of Stanley v. United States, 1 Okla. 336, 33 P. 1025, 1029. In that case the court reviewed the defendant's testimony in the case in which he was charged with having sworn falsely and the court then said: ''Based upon this examination in chief, the testimony upon which the perjury is assigned was given by Stanley on cross-examination. It has no relation to the testimony in chief, and was not a proper cross-examination for any purpose except to show his interest, bias, or prejudice, to affect his credibility. But was his credibility a material matter? He had testified to nothing that was material, and it was immaterial whether he was a credible witness or not. If all he testified to in chief had gone to the jury unexplained and uncontradicted, it could not have influenced their verdict in the least or had any bearing upon their minds in determining any question before them. The fact that a person has permitted a witness to testify to immaterial matters without objection does not entitle him to cross-examine the witness on such immaterial matters, or to impeach him.'' On rehearing the court stated the applicable rule as follows: ''* * * the true rule deducible from the foregoing, and the authorities cited in support thereof, is, was the alleged false testimony of such a character as to influence the minds of the jury in arriving at a correct verdict, or did it in any manner affect their finding? If it is of such a character as to influence or affect the verdict, then it is material matter. If not, it is immaterial, and, however false it may be, is not perjury.'' The court then said that ''inasmuch as he testified in chief to nothing that would in the least influence the minds of the jurors, or affect their verdict, his credit was not in issue'' and the whole cross-examination was immaterial. And see People v. Brill, 165 N.Y.S. 65, 69; State v. Hall (Mont.), 292 Pac. 734, 735.

In the case of State v. Circuit Court for Grant and Day Counties, 69 S.D. 454, 11 N.W. (2d) 659, 661, it was held that a defendant's false testimony, that he was married and a certain woman in the courtroom was his wife, was not directly material to the principal issue of whether the defendant did pass a worthless check; and that such testimony did not support his credibility as a witness and was not material to the issues being tried. However, the court said: ''It might well be that had defendant been charged with some type of crime other than issuing a worthless check his marriage or non-marriage would be material either as to the principal issue or as affecting his credibility.''

The cases relied upon do not aid appellant under the facts of this case and we need not determine whether appellant ''put his credibility in issue when he offered himself as a witness.'' See 58 Am. Jur. 373, Witnesses, Section 687; 70 C.J. 793, Sec. 990. The record here shows that appellant was the defendant in the petit larceny case and that he was also an admitted felon (he admitted that he had been convicted of grand larceny in 1929 and served two years at Jefferson City). He could not have been compelled to testify against himself. Nevertheless he availed himself of the benefit of Sections 491.050 and 546.260 and was sworn as a witness and testified in his own behalf. The evidence he gave was competent and proper. ''It is entirely proper, either by way of introduction or cross-examination, to identify a witness and to inquire into his residence, antecedents, social connections and occupation, particularly as they reflect his credibility either for good or bad. 70 C.J. 762, Sec. 919, 28 R.C.L., Sec. 199, p. 610; Annotation 1 A.L.R. 1402.'' Hungate v. Hudson, 353 Mo. 944, 185 S.W. (2d) 646, 649; Wilcox v. Coons (Mo. Sup.), 241 S.W. (2d) 907, 915(18).

 Appellant sought the benefit of a personal appearance before the jury in the capacity of a witness and to testify to specific facts which he deemed to be beneficial to one charged with petit larceny. He testified to facts tending to show good character, to wit, to steady work for one employer for seven years and to being ''a man of family,'' facts which would indicate to the jury that it was unlikely he was guilty of stealing a bushel and one-half of oats. See State v. O'Connor, 31 Mo. 389, 391. This testimony bore directly on the issue of guilt or innocence, to wit, Did defendant steal the oats? We do not here consider defendant's testimony on redirect examination in the magistrate court. In effect he there denied the theft of the oats by testifying that, since certain convictions which he admitted, he had gone absolutely straight and had supported his wife and family for seven years. It is unnecessary to consider this evidence, although no question has been raised concerning its admissibility or the court's right to consider it on the issue of the materiality of defendant's false testimony denying other prior convictions

The testimony given by defendant in his own behalf on direct examination was material to the issues on trial. In such situation the

state had the right of impeachment of his credibility as a witness by cross-examination to show prior convictions. The matters inquired about were material to the issues as affecting defendant's credibility as a witness. Both defendant's direct testimony and the matter of prior convictions were matters of a character to influence or affect the verdict of the jury. The alleged false testimony, to wit, that defendant had not been convicted of the various felonies inquired about, tending as it did to sustain defendant as a witness, was clearly evidence of such a character to influence the jury in arriving at a correct verdict. The court did not err in overruling the defendant's motion for a directed verdict. State v. Moran, supra.

█ Appellant further assigns error on the giving of Instruction No. 5 for the reason that it "ignored the fact as to whether prior convictions of the defendant of other crimes was a material issue in the case"; and that it did "not state any proposition of law." Appellant says that, since it was necessary to charge false swearing as to a material matter, it was necessary for the court to instruct the jury as to what was a "material matter" in the petit larceny case, so the jury could "apply the facts to the law"; and that the jury could "not arrive at a verdict with facts alone." Instruction No. 5 required the jury to find every essential fact necessary to make out a case of perjury under the Missouri statute (that is if the matter of prior convictions was material as a matter of law) and upon a finding of such facts it directed a verdict of guilty as charged in the information. This was sufficient. See State v. Miller, 93 Mo. 263, 268, 6 S.W. 57. The issue of materiality could not have been properly submitted to the jury since that was a question of law for the court. State v. Faulkner, 175 Mo. 546, 616, 75 S.W. 116; State v. Fannon, 158 Mo. 149, 154, 59 S.W. 75; State v. Moran, supra, 216 Mo. 550, 557; State v. Williams, 30 Mo. 364. If the jury found the facts as submitted in Instruction No. 5, then the defendant was guilty as charged in the information and a verdict of guilty was proper.

Appellant contends that the court erred in not instructing the jury on all questions of law arising in the case in that the court did not instruct the jury as to the meaning of perjury or define the technical word "perjury," nor tell the jury its essential elements under the statute; and that the court failed to define the term "material matter" or to advise the jury by a written instruction that the testimony alleged to have been false was "material matter," if it was.

In giving Instruction No. 5 the court clearly passed upon the matter of the materiality of the alleged false testimony concerning prior convictions. By giving the instruction the court clearly ruled that the testimony was material as a matter of law. It was not necessary for the court to █ tell the jury that the alleged false testimony was a "material matter" in the petit larceny case because the instruction given to the jury was drafted on the theory that the alleged false

testimony was "material matter," as a matter of law. In view of the necessary elements and facts required to be found under Instruction No. 5, as a condition to finding the defendant guilty, it was unnecessary for the court to define the word "perjury" or to set out the terms of the statute under which the prosecution was instituted.

Appellant contends that the court erred in giving Instruction No. 4 as to the credibility of witnesses. Appellant complains particularly of the closing part of the instruction, and of the word "should" as contained therein. The instruction was in the usual form as to the credibility of witnesses, but concluded as follows: "In this connection, you are further instructed that if you believe that any witness has knowingly sworn falsely to any material fact in issue, you should disregard such false testimony and may reject any or all such witness' testimony." Appellant insists that the instruction is unsupported by evidence and that it is misleading, prejudicial and invaded the province of the jury. Appellant cites cases to the effect that it is only where there is material conflict in the testimony that such an instruction is justified. In this case defendant offered no evidence. All of the witnesses appearing appeared on behalf of the state. The instruction, if erroneous, was favorable to the defendant and he could not have been prejudiced thereby. Clearly there was no error in telling the jury to reject testimony found to be false. State v. Rozell (Mo. Sup.), 279 S.W. 705, 710. The matter of giving the instruction was within the sound discretion of the trial court and there was no manifest abuse of such discretion to the prejudice of appellant. See State v. Caviness, 326 Mo. 992, 999, 33 S.W. (2d) 940. The assignment is overruled.

The judgment is affirmed. All concur.